## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TRAVIS D. ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| HUHTAMAKI, INC. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S COMPLAINT

Plaintiff Travis D. Ross states and alleges the following against defendant Huhtamaki, Inc.

## NATURE OF THE COMPLAINT

1.      This is an action for legal and equitable relief brought under the American with Disabilities Act (ADA), as amended by the ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. §§ 12101 *et seq*.

2.      "The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA," and "disability" shall be "construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.1.

3.      "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(h)(iii).

4.      This action further asserts a Kansas retaliatory discharge claim.

5.     Mr. Ross was unlawfully terminated by Huhtamaki, Inc., after he informed management that he intended to file a workers' compensation claim.

6.     Mr. Ross was also unlawfully terminated and discriminated against in a place of employment by Huhtamaki on the basis of disability (actual, record, and perceived).

7.     Mr. Ross requested a reasonable accommodation in good faith.

8.     Defendant, by and through its agents, employees, or servants exercising their authority, failed to accommodate and retaliated against Mr. Ross.

9.     The unlawful conduct of Huhtamaki, Inc. deprived Mr. Ross of his employment and directly resulted in the significant loss of financial compensation and other benefits which he would have earned and been entitled to but for the discrimination and retaliation alleged in this complaint.

## PARTIES

10.     Mr. Ross is a 52-year old American male and USA citizen domiciled in Jackson County, Missouri.

11.     Huhtamaki, Inc. is a global consumer and specialty packaging company that operates manufacturing facilities and sales offices throughout the world.

12.     Huhtamaki is a corporation that is authorized to do business in Kansas. Huhtamaki is an "employer" as defined by the ADA and ADAAA because it engages in an industry affecting commerce and had twenty or more employees for each working day in at least twenty or more calendar weeks in every year of Mr. Ross's employment with Huhtamaki.

13.     Mr. Ross was employed by Huhtamaki and worked at its North America manufacturing facility at 9201 Packaging Drive, De Soto, Kansas 66018.  Huhtamaki treated Mr. Ross as an employee as it related to employment, compensation, taxes, and workers' compensation.

14.     At all relevant times to Mr. Ross's employment, Huhtamaki employed 15 or more persons and engaged in interstate commerce.

## JURISDICTION AND VENUE

15.     Mr. Ross submits to the jurisdiction of this Court for the adjudication of the claims alleged herein.

16.     Huhtamaki is generally subject to personal jurisdiction to Courts of Kansas because it has consented to jurisdiction in Kansas by applying and receiving permission from the Kansas Secretary of State's Office to do business in Kansas as a foreign corporation and because Huhtamaki conducts ongoing, substantial and continuous business in Kansas.

17.     Huhtamaki is subject to personal jurisdiction in this Court for the specific purposes of this lawsuit because the acts and omissions alleged herein took place in Kansas, within this Court's territorial jurisdiction.

18.     This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Mr. Ross's claims arise under federal law.

19.     The Court has supplemental jurisdiction over Mr. Ross's retaliatory discharge claim under 28 U.S.C. § 1367.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Mr. Ross's claims occurred within this District.

## ADMINISTRATIVE PROCEDURES

21.     On August 7, 2019, Mr. Ross filed a charge against Huhtamaki with the Equal Employment Opportunity Commission, Charge No. 563-2019-01914; he filed an amended charge on September 30, 2019.  *See* Exhibit. 1, attached and incorporated as if fully set forth herein.

22.     On January 31, 2020, the EEOC issued Mr. Ross a Notice of Right to Sue Huhtamaki.  *See* Ex. 2.

## FACTUAL SUPPORT

23.     On January 10, 2000, Mr. Ross began working for Huhtamaki.

24.     Mr. Ross worked for Huhtamaki for almost 20 years.

25.     Mr. Ross held the position of "warehouse clerk," or "shipping clerk."

26.     His duties included communicating with various departments to facilitate the shipment of food packaging products from the warehouse.

27.     Mr. Ross's work performance, at all relevant times, was consistent with Huhtamaki's legitimate expectations, and he met or exceeded expectations and goals set.  He received positive feedback regarding his work performance at all relevant times.

28.     Mr. Ross was never disciplined for any unethical conduct.

29.     Mr. Ross has all the required qualifications for the work he performed for Huhtamaki.

*Disability*

30.     In September 2017, Mr. Ross sustained a serious back injury on the job.  Mr. Ross's shoulder had also gradually become impaired.

31.     Mr. Ross notified his supervisor of his physical impairment.

32.     Mr. Ross's supervisor did not inform Mr. Ross of his eligibility for workers' compensation.

33.     Mr. Ross sought medical treatment from various doctors, and he was eventually diagnosed with disc incompetence and severe discogenic pain, and pain affecting his sacriellium joints.

34.     Mr. Ross missed work for about 27 days due to his disability.

35. Due to his physical impairment, Mr. Ross was substantially limited in one or more major life activities, including but not limited to, performing manual tasks, lifting, bending, standing, reaching, exercising, sleeping, walking, engaging in sexual activity, working, and musculoskeletal functions.

36. Mr. Ross was limited in his major life activities as compared to most people in the general population.

37. Despite his disability, Mr. Ross returned to work in October 2017, in his same position, warehouse/shipping clerk.

38. Mr. Ross's supervisors and managers were aware that he missed work due to his disability.

39. Upon his return, management made clear to Mr. Ross that they were displeased with him missing work.

40. Around June 2018, Mr. Ross took Family Medical Leave Act leave due to his disability.

41. In October 2018, he took long-term disability. At the time, Huhtamaki informed Mr. Ross via letter that he "will remain an active employee for the period of time you are disabled" at a maximum of 12 months.

42. Mr. Ross had surgery performed on his back. Mr. Ross continued to experience back and shoulder pain and was placed on a lifting restriction.

*Workers' Compensation*

43. In early November 2018, Mr. Ross told management that he intended to return to work, but "I might not be able to return back to [work] 100 percent."

44.     Mr. Ross's doctor suggested that he file a workers' compensation claim.  This is the first time Mr. Ross became aware that he may be entitled to benefits for workers' compensation.

45.     On November 9, 2018, Mr. Ross called Kendra Yoder, human resources manager, and requested she "start a claim for worker[ers] compensation for me."

46.     Mr. Ross's supervisor, Chris Schuler, in a raised angry voice, responded, "why would you want to do that!"

47.     Management discouraged Mr. Ross from filing a worker's compensation claim.

48.     After talking to Ms. Yoder and Mr. Schuler, Mr. Ross felt intimidated by management and believed he could be fired if he pursued workers' compensation benefits.

49.     Believing he would be retaliated against after his discussion with management, Mr. Ross told them to disregard his request and apologized for the "inconveniences."

50.     Huhtamaki initially promised to give Mr. Ross until at least June 2019 to return to work.

51.     After the workers compensation discussion, Huhtamaki purportedly "restructured" Mr. Ross's department, purportedly eliminating Mr. Ross's position.

52.     In early February 2019, Mr. Ross was told by his doctor that he could return to work with restrictions.

53.     On or about February 8, 2019, Mr. Ross returned to work.

54.     When Mr. Ross returned to work, he communicated to his supervisor and human resources that he was ready to work.  He requested an accommodation from Kendra Yoder for restrictions given by his doctor, which stated "30 lbs lifting restriction until surgery pt [sic] can return to work on 2/8/19."

55.     The essential functions of Mr. Ross' job did not require him to lift more than 30 pounds.

56.     Mr. Ross was able to perform the essential functions of his job with or without a reasonable accommodation.

57.     After Mr. Ross submitted his request for an accommodation to temporarily lift no more than 30 pounds, he was later terminated that same day by the same management and human resources personnel that had knowledge of his disability, his past medical leave, and his prior intent to file for workers' compensation and request for an accommodation.

58.     During the termination discussion, Mr. Ross asked why he was being terminated. A manager, a decision-maker, told him it was because he was "off work."

59.     Mr. Ross was "off work" due to his past or present disability.

60.     Mr. Ross told the human resources manager involved in his termination that he was off work because of his disability.  The human resources manager responded "we thought you would be back at work."

61.     Mr. Ross was disabled and age 51 when he was terminated.

62.     Huhtamaki did not engage in the interactive process required by the ADAAA.

63.     Huhtamaki then changed the reason that Mr. Ross was terminated, and told Mr. Ross he was terminated due to a purported "restructuring."

64.     Huhtamaki claims this "restructuring" Mr. Ross's job occurred in December 2018 and his position was eliminated.

65.     However, Huhtamaki advertised Mr. Ross's job as available after he was terminated.

66.     Huhtamaki represented to Mr. Ross it was "eliminating a headcount in the warehouse hourly staff."   However, Mr. Ross was the only employee in his department eliminated during this time.

67.     After his termination, Huhtamaki did not "restructure" Mr. Ross's department.

68.     Mr. Ross's position was eliminated and he was terminated because he requested human resources to start processing a workers' compensation claim.

69.     Mr. Ross was terminated for his past, present, record of disability, and perceived disability, and for requesting a reasonable accommodation.

70.     Mr. Ross was qualified for the position in which he was terminated.   His performance was superior to his unprotected co-workers under the same supervisors and management.

71.     No other non-disabled, younger employees in Mr. Ross's department had their job "restructured."   Mr. Ross was further told by his manager there were no openings for his position.

72.     Within about a month of Mr. Ross's termination, Huhtamaki:

   (a)     Advertised Mr. Ross's position that was purportedly eliminated;

   (b)     Permanently replaced Mr. Ross with a younger employee not in a protected class;

   (c)     The younger employee was not disabled and never sought workers' compensation;

   (d)     The employee had less experience and was lesser qualified than Mr. Ross; in fact, Mr. Ross previously provided training to the employee that replaced him;

   (e)     The employee that replaced Mr. Ross worked in the same department as Mr. Ross under the same supervisors and management.

73.     Similarly situated non-disabled employees in Mr. Ross's department did not have their job "restructured" around this time period.

74.     Huhtamaki's decision to refuse to accommodate Mr. Ross and to terminate him was based on his disability (actual and/or perceived).  Further, he was terminated in retaliation for requesting workers compensation and an accommodation.

75.     On or about February 11, 2019, Mr. Ross called Huhtamaki to obtain a severance package.  Huhtamaki refused to offer Mr. Ross any severance package.

76.     Huhtamaki has offered severance packages to other terminated employees that did not intend to file workers' compensation claims or seek a reasonable accommodation.

77.     Huhtamaki has refused to reoffer the shipping clerk position to Mr. Ross when it has become available.

## COUNT I

### ADA, ADAAA – Disability Discrimination

78.     Mr. Ross incorporates by reference every other allegation made herein.

79.     Mr. Ross is a qualified individual with a disability under the ADA/ADAAA.

80.     Mr. Ross is disabled under the ADAAA, has a record of disability, and was perceived/regarded by Huhtamaki as disabled.

81.     Mr. Ross is qualified to perform the essential functions of his former job with or without a reasonable accommodation.

82.     Mr. Ross was treated differently and unfairly because of his actual disability, record of disability, and perceived and/or actual disability.

83.     Huhtamaki failed to engage in the interactive process and failed to provide Mr. Ross with a reasonable accommodation.

84.    Mr. Ross's perceived, record of disability, and/or actual disability is the reason that Huhtamaki terminated him.

85.    The conduct alleged herein adversely affected the terms, conditions, or privileges of Mr. Ross's employment.

86.    As a direct and proximate cause of the actions and conduct set forth herein, Mr. Ross suffers and will continue to suffer damages, emotional distress, and inconvenience.

87.    Huhtamaki, through its agents and employees, engaged in discriminatory practices with malice or reckless indifference to Mr. Ross's federally protected rights. Huhtamaki is therefore liable for punitive damages in an amount sufficient to punish it and to deter it and other companies from engaging in similar conduct.

WHEREFORE, Mr. Ross prays for judgment against Huhtamaki on Count I of his complaint, for a finding that he was been subjected to unlawful disability discrimination in violation of 42 U.S.C. §§ 12101 *et seq.* (ADA, ADAAA); for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, front pay, costs expended, reasonable attorney and expert fees, pre-judgement and post-judgement interest, and for such other and further relief the Court deems just and proper.

### COUNT II – ADA, ADAAA, Failure to Accommodate

88.    Mr. Ross incorporates by reference every other allegation made herein.

89.    Mr. Ross is disabled under the ADAAA, has a record of disability, and was perceived by Huhtamaki as disabled.

90.    Mr. Ross is qualified to perform the essential functions of his former job with or without a reasonable accommodation.

91.     In February 2019, Mr. Ross requested a reasonable accommodation, that he be allowed to return to work with a lifting restriction.

92.     Huhtamaki failed to engage in the interactive process and failed to provide Mr. Ross with a reasonable accommodation.

93.     Because of Mr. Ross's request for a reasonable accommodation, Huhtamkai retaliated against him and terminated him.

94.     As a direct and proximate cause of the actions and conduct set forth herein, Mr. Ross suffers and will continue to suffer damages, emotional distress, and inconvenience.

WHEREFORE, Mr. Ross prays for judgment against Huhtamaki on Count II of his complaint, for a finding that he was been subjected to unlawful disability discrimination in violation of 42 U.S.C. §§ 12101 *et seq*. (ADA, ADAAA); for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, front pay, costs expended, reasonable attorney and expert fees, pre-judgement and post-judgement interest, and for such other and further relief the Court deems just and proper.

## COUNT III

### ADA, ADAAA – Retaliation

95.     Mr. Ross incorporates by reference every other allegation made herein.

96.     Mr. Ross engaged in protected activity under the ADA, including but not limited to, requesting a reasonable accommodation of not lifting over 30 pounds, and to be returned to work.

97.     Mr. Ross suffered and adverse employment action by being denied a reasonable accommodation and being terminated the day he requested an accommodation.

98.     There is a causal connection between Mr. Ross's protected activity and the adverse employment actions.

WHEREFORE, Mr. Ross prays for judgment against Huhtamaki on Count III of his complaint, for a finding that he was been subjected to unlawful retaliation in violation of 42 U.S.C. §§ 12101 *et seq*. (ADA, ADAAA); for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, front pay, costs expended, reasonable attorney and expert fees, pre-judgement and post-judgement interest, and for such other and further relief the Court deems just and proper.

### COUNT IV – Workers' Compensation Retaliation

99.     Mr. Ross incorporates by reference every other allegation made herein.

100.    Mr. Ross sustained a work-related injury arising out of and during the course of his employment with Huhtamaki, for which he could file for workers' compensation benefits.

101.    Huhtamaki had knowledge of Mr. Ross's injury and his intention to seek a workers' compensation claim.

102.    Mr. Ross had the right to seek workers compensation benefits, pursuant but not limited to, Kan. Stat. Ann. §§ 44-501, *et., seq*.

103.    Mr. Ross informed Huhtamaki of his intent to seek workers' compensation benefits.  Management was unhappy about it.

104.    Within about one month after Mr. Ross's disclosure that he intended to seek workers' compensation benefits, his position was purportedly "eliminated" due to a purported "restructuring" of the department.

105.    Mr. Ross's position was "eliminated" and he was terminated in retaliation for intending to apply for workers' compensation benefits.

106.    Kansas law prohibits employers from interfering with and/or retaliating against employees who exercise or intend to exercise worker compensation rights.

107.    Mr. Ross was terminated in violation of public policy.

108.    As a result of the unlawful acts and conduct of Huhtamaki, Mr. Ross has suffered damages, including but not limited to lost wages, lost benefits, humiliation, stress, anxiety, and other emotional distress.

109.    Huhtamaki's conduct was outrageous, intentional, willful, or shows evil motive or reckless indifference or conscious disregard for Mr. Ross's rights and the rights of others; therefore, Huhtamaki is liable for punitive damages.

WHEREFORE, Mr. Ross prays for judgment against Huhtamaki on Count IV of his complaint, for a finding that he was been subjected to unlawful retaliation in violation of Kansas law; for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, front pay, costs expended, reasonable attorney and expert fees, pre-judgement and post-judgement interest, and for such other and further relief the Court deems just and proper.

## Designated Place of Trial

Mr. Ross designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Respectfully submitted,

DCG LAW FIRM, LLC


By: /s/ *Dione C. Greene*_____
    Dione C. Greene  KS #23010
    104 W. 9th Street, Suite 401
    Kansas City, Missouri 64105
    Telephone:  816.560.5256
    dcgreene@dcgreenelaw.com

    ATTORNEYS FOR PLAINTIFF TRAVIS
    ROSS


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2020, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system.

                        /s/ *Dione C. Greene*_____
                        Attorney For Plaintiff Travis Ross